Leonard H. Sandler, J.
Plaintiff, acting pro se, sued the defendant, an Oldsmobile dealer, in the Small Claims Part for damages resulting from an alleged breach of an order to deliver a new Oldsmobile. The price reflected an agreed allowance for plaintiff’s used car. Underlying plaintiff’s lawsuit is the charge *820 that on the day he arrived to receive his new car, some months after the original order, the defendant reappraised the value of the plaintiff’s used car by such a markedly reduced amount as to establish, under all the circumstances, that the reappraisal was not done in good faith.
The defendant interposed a counterclaim for an amount just in excess of $300 that is totally without any semblance of merit, and that was obviously designed to harass the plaintiff by removing the case from the Small Claims Part of this court.
The central question here is the correct construction of that paragraph of defendant’s form order sheet (undoubtedly in general use in the industry) that reserves to the dealer the right to reappraise the used car allowance at the time of actual delivery of the new car — with a correlative right in the purchaser to cancel if the new value is below the original one.
On September 18, 1969, plaintiff ordered a 1970 Oldsmobile, with specified accessories, for $3,450, following an allowance of $650 for his 1966 Oldsmobile; Plaintiff made a down payment of $50,’ $10 at the above date and $40 some days later.
A few weeks later, under circumstances not entirely clear, plaintiff signed and received a new order which arbitrarily increased both the purchase price and the used car allowance by an identical amount. Apparently, this was a customary device for facilitating bank loans, and did not alter the previous deal. Using this order, plaintiff secured a bank loan for $3,400, embodied in a cashier’s check for that amount payable to himself and the defendant.
Shortly thereafter, having been informed that the new car was ready, plaintiff hastened to defendant’s place of business — ready and eager to consummate the transaction and drive away in his 1970 Oldsmobile. When plaintiff arrived, his used car was taken for a drive by one of the defendant’s employees, who, according to plaintiff, then described the car as junk and proposed a new trade-in allowance of $50.
Presenting the only legally significant issue of credibility, defendant’s employee testified that he had in fact valued the car at $300 to $400 after his drive.
In any event, plaintiff angrily rejected the new valuation, promptly left defendant’s premises and, within a few days, contacted another Oldsmobile dealer who valued his car at $400. An exchange of cars was arranged between the two dealers, so that plaintiff was able to secure the car originally intended for him. The result of the exchange was to increase by $20 the car’s price.
*821 Plaintiff’s suit for $270 thus represents the difference between the original deal with the defendant and the amount it ultimately cost him to buy the car.
I find as a fact that defendant’s employee did state to plaintiff that he had reappraised plaintiff’s car in the amount of $50 — as testified by plaintiff — and that this valuation was not made in good faith.
The critical legal question thus becomes whether the provision of the form order, under which defendant reserved the right to reappraise the used car allowance at the time of delivery where delivery is deferred, implies that the right of reappraisal is to be exercised in good faith. I conclude as a matter of law that good faith is an essential implied condition for the exercise of the right of reappraisal. (See Uniform Commercial Code, §§ 1-201, 2-103; cf. 2-305.)
To hold otherwise would mean that the order agreement, and the promises exchanged therein, were intended to be wholly illusory until delivery has been completed. Such a construction would make a travesty of an agreement that evoked from the plaintiff, as it was intended to, the following substantial reliance : a down payment, suspension for a period of his right to acquire a car elsewhere, and the securing of a bank loan.
As Professor Corbin said in his treatise (vol. 3, 1960 ed.) on contracts in section 541: “ In order to prevent the disappointment of expectations that the transaction aroused in one party, as the other had reason to know, the courts find and enforce promises that were not put into words, by interpretation when they can and by implication and construction when they must. ’ ’
In reaching the above conclusion, I do not wish to be understood as doubting the legitimate considerations prompting the provision in question when the delivery of the car is to be deferred. Obviously, the buyer’s car may suffer some deterioration during the intervening period. Arguably, although less clearly, no significant purpose would be served by driving the car at the time of original valuation, since the car must be tested again on the date of delivery.
But the fact that the clause represents a reasonable response to a practical problem does not obscure the reality that it is open to, and indeed lends itself to, serious and recurrent abuse. In the presence of a potential buyer, searching for the optimum price for his used car, a dealer may well be disposed to place a generous value on the used car, realizing that he could later renegotiate the figure when his bargaining position was immensely strengthened.
*822 For it is surely clear that when a buyer has signed an order for a particular car of a certain color and with special accessories, has made a cash down payment, has secured a bank loan, and has arrived in his somewhat worn old car ready to receive a resplendent new vehicle, his ability to resist a new less favorable deal is at very low ebb indeed.
Surely, it is no surprise that defendant’s witness acknowledged that used car allowances are often lowered at the delivery date. And although no testimony was presented directly, it is surely a fair surmise that instances in which used cars are found to have a higher value at the delivery date would represent extraordinary phenomena in the annals of any car dealer.
In evaluating the appropriate remedy for the kind of breach presented, I have considered that the arrangement of circumstances in this very common situation presents car dealers with a powerful inducement to place high values on used cars when attempting to land the order and low values when the physical presence of the new car after an intervening period has substantially reduced the purchasers’ resistance. Car dealers should be encouraged to withstand this temptation. (5 Corbin, Contracts, §§ 997, 1002 [1960 ed.].)
The plaintiff, like any purchaser under the circumstances, was entitled to a good faith valuation of his car on the delivery date.
In the absence of any good faith reappraisal by the defendant, the only valuation by the defendant is that fixed at the time of the original order, and I find that to be controlling.
Accordingly, I find for the plaintiff in the sum of $270, with interest from December 1,1969.